IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

MOUA VUE,

    Petitioner,      No. CIV-S-05-0981 JAM KJM P

  vs.

JEANNE WOODFORD,

    Respondent.     <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Petitioner is a California prisoner proceeding with an amended application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted in 2002 of first degree murder (Cal. Pen. Code §187), attempted murder (Cal. Pen. Code §664, 187), and firearm use for the benefit of a criminal street gang (Cal. Pen. Code §12022.53). He is serving a total sentence of 82 years-to-life imprisonment and seeks relief on the grounds that he was convicted with constitutionally insufficient evidence; his trial counsel rendered ineffective assistance of counsel in multiple respects, including cumulatively; and his Sixth and Fourteenth Amendment rights were violated by the trial court when he was ordered to serve consecutive sentences. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied, as explained below.

/////

I. <u>Factual Background</u>

On direct appeal, the California Court of Appeal summarized the facts presented at trial as follows:

> This incident involved a gang-related shooting at an adjacent car on a freeway on the night of October 19, 1998.
>
> On that night, Mike Xiong, along with several other persons in his car, picked up his friend, Gao Vue, near the home of Her Yang. Before Gao got into Mike's car, he had walked by Her's house. There were a number of people at Her's place at this point, including defendant, codefendant David Her, codefendant Russo Vang, Pou Vue, Molia Yang and May Cha. (In a joint trial, a separate jury convicted David of the same offenses as defendant, but deadlocked regarding Russo. Her Yang is also known as Billy; defendant as Gizmo; David as Dino.) Earlier that evening, May had seen David with a handgun, and Pou and Molia had seen Russo with a sawed-off shotgun.
>
> As Gao walked by Her's house, there were several young men out front, including Pou. After Pou commented, "Who is that guy in front of the street?" and "How come he's looking over here?," some of these young men yelled something at Gao. Gao ran toward Mike's car and off they went.
>
> At that point, Pou saw defendant, David and Russo, who still had the big gun with him, get into defendant's car and follow Mike's car. One of Mike's passengers said someone was following them.
>
> (Molia had accompanied defendant to Her's house on the night of October 19. While in the bathroom at one point, she heard some cars leaving. When she came out, she noticed that defendant, David, and defendant's car were gone.)
>
> Mike got onto the freeway. Shortly thereafter, a car pulled alongside in the lane to his left (i.e., the fast lane). The cars were traveling about 70 miles per hour. The adjacent car's front seat passenger then displayed the "CK" hand gesture, signifying "Crip Killer." The back seat passenger inserted a magazine into a handgun and fired three to four shots at Mike's car. There was evidence that the front passenger added at least one more.
>
> One of the shots struck Gao in the left eye and killed him. Another shot struck Mike near his left eye and passed through his nose. Mike was able to pull his car off the freeway, and he and his other passengers summoned help.

/////

/////

2

|   |   |
|---|---|
| 1 | According to Molia, defendant returned to Her's house in his car about 5 or 10 minutes after he had left. David was in the car with him. About 10 minutes later, defendant left alone in his car, which was a light blue, two-door Mazda with a sunroof and a "tail" (i.e., spoiler). |

According to Molia, defendant returned to Her's house in his car about 5 or 10 minutes after he had left. David was in the car with him. About 10 minutes later, defendant left alone in his car, which was a light blue, two-door Mazda with a sunroof and a "tail" (i.e., spoiler).

Meanwhile, the police interviewed some of the occupants of Mike's car. Stacy Xiong explained that the shooters' car was, the same one she noticed leaving Her's house. Cindy Thao described this car as a light blue two-door with a sunroof and a tail, a description Stacy largely confirmed. Mike also told the police the car was light blue.

The police went to Her's house. They had David and the other young men still at the house gather in the front, so that some of the girls from Mike's car could individually view them anonymously. The girls identified David as the driver of the shooter's car, and, in varying respects, identified Sua Vang and Va (Ming) Vue, defendant's brother, as the possible shooters. In subsequent photographic lineups, Mike identified Va as the shooter and disputed Sua's identification. Molia testified that Va did not arrive at Her's house until after defendant and David had already left. At trial, Cindy testified that photographs of defendant's car did not look like the shooters' car.

The police also searched Her's house. In a bedroom closet, they found a loaded .380 semi-automatic handgun; in a dresser, they found an empty 40-caliber magazine clip. A .380 bullet recovered from Gao's head during his autopsy had been fired from the same gun.

Pou told an investigating detective that he had asked defendant at work the next morning what had happened. Initially, Pou told the detective that defendant had said nothing had happened. Subsequently, Pou told the officer that defendant had said they had chased the car and shot some people, killing one and injuring another. The victims, defendant told Pou, were enemies from out of town.

A police officer testified as an expert in Asian gangs. He noted that David and Russo had been validated as being members of the MOD (Masters of Destruction) criminal street gang, and opined that defendant was a member as well. In response to a hypothetical question based on the facts of this case, the officer also opined that the charged offenses were done for MOD's benefit.

Resp't's Lodged Doc. E at 2-5 (footnotes omitted).

/////

II. Analysis

    A. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

4

law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

/////
/////
/////

5

B. Petitioner's Claims

1. Conviction On Insufficient Evidence

In his first claim, petitioner asserts his convictions are not based upon constitutionally sufficient evidence. Petitioner argues that the testimony of Pou Vue and Molia Yang "equally established" that Sua Vang gave chase to the victims, in a car closely matching the victims' description. Am. Pet. at 7-9. Petitioner raised this claim in a petition for writ of habeas corpus filed in the California Superior Court, which issued a reasoned opinion. See Resp't's Lodged Doc. I. His later petition to the state Supreme Court, which raised the same claim, was resolved in a one-line denial. See Resp't's Lodged Doc. K.

The Superior Court rejected the claim, reasoning as follows:

> Petitioner first claims that the evidence was insufficient to support the convictions and enhancements, and that appellate counsel was ineffective in failing to raise the issue on appeal.
>
> The issue is one that could have been but was not raised on appeal, both on its own and as error in the trial court's denial of the new trial motion based on an insufficiency claim. The claim otherwise would be barred; however, petitioner has couched the claim in ineffective assistance of counsel terms, therefore an exception to that bar applies, allowing review of the claim on the merits (In re Dixon (1953) 41 Cal. 2d 756, reaffirmed in In re Harris (1993) 5 Cal.4th 813, 829, 834, 834 fn. 8, 836, 840-841, 841; In re Antazo (1970) 3 Cal. 3d 100, 108 [exceptions to Dixon rule are the same as those to Waltreus rule]).
>
> The claim is meritless. As noted in the Third District Court of Appeal opinion affirming the judgment in the case, May Cha saw codefendant David Her with a handgun, and Pou Vue and Molia Yang saw Russo with a sawed-off shotgun, earlier in the evening of the events. Murder victim Gao Vue was seen outside Her Yang's house, but when seen ran towards Mike's car and drove off. Pou Vue then saw petitioner, David Her, and Russo, who still had the big gun with him, get into petitioner's car and follow Mike's car. A passenger in Mike's car also said that someone was following them. Testimony then was that the assailants' car pulled up alongside Mike's car, and the front seat passenger in the assailant's car displayed a gang gesture, while the back seat passenger inserted a magazine into a handgun and fired three to four shots at Mike's car. There was also evidence presented that the front passenger added at least one more shot. One shot killed Gao Vue, and another shot struck Mike in the eye. Testimony also

established that petitioner returned to Her Yang's house about 5 or 10 minutes after he had left, with David Her in the car with him. Passengers in Mike's car described the assailants' car, which matched a description of petitioner's car, although they thought that Sua Vang's car was the shooters' car and not petitioner's car. Police went to Her Yangs's [sic] house with the girls who had been in Mike's car, and the girls identified David Her as the driver of the shooter's car, and Sua Vang and Ming Vue as the possible shooters. A bullet recovered from victim Gao Vue matched that of a loaded handgun found in a bedroom closet in Her Yang's house. Pou Vue told a detective that petitioner had said that they had chased the car and shot some people, killing one and injuring another, and that the victim[s] were enemies from out of town. There was also evidence that David Her and Russo were validated members of the Masters of Destruction gang.

This was sufficient evidence upon which petitioner's convictions rested. That there was other evidence presented at trial that pointed to other persons, and not petitioner, as being the shooters, does not detract from the jury's ability to reject that other evidence and determine that petitioner had gotten in the chasing car, and had participated in the shootings that were clearly gang-related. Indeed, petitioner admits that the evidence is sufficient if witnesses Pou Vue and Molia Yang are believed, and the jury was entitled to find these witnesses credible and believe their testimony while rejecting conflicting testimony from others.

The trial court initially had determined that the evidence was sufficient to support the verdicts, in rejecting petitioner's motion for a new trial based on this same claim. Petitioner fails to show how that decision was erroneous, and gives no reason for the court to now find differently.

The evidence, therefore, was sufficient to sustain the verdicts, and appellate counsel was not ineffective in failing to raise the issue on appeal. As such, petitioner's claim of insufficiency of the evidence is denied (In re Bower (1985) 38 Cal. 3d 865).

Resp't's Lodged Doc. I at 1-2.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also

Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005), cert. denied, 546 U.S. 1137 (2006). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.

It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Dinkane, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)); see also Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

Viewing the evidence in the light most favorable to the verdict, and for the reasons described by the California Superior Court, this court concludes there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of the crimes for which he was convicted. Petitioner wrongly assumes that the testimony of Pou Vue and Molia Yang "equally established" that Sua Vang gave chase to the victims. This assumption leads petitioner to the conclusion that his guilt and Vang's were mutually exclusive. The error in petitioner's conclusion is that conflicting testimony is neither the equivalent of reasonable doubt nor the equivalent of mutual exclusivity. Victim-witness Cindy Thao placed Sua Vang and Ming Vue in the assailant's car. RT 751-752. Pou Vue placed

petitioner in a different car, with co-defendants Her and Russo. RT 631-633. However, Her was also identified by Cindy Thao as a possible driver of the assailant's vehicle. RT 752. When faced with conflicting testimony, the jury evidently gave more weight to the witness accounts indicating Her drove the assailant's car. The jurors thus could reasonably have found, and apparently did so find, that petitioner's guilt flowed from witness accounts that placed Her and petitioner in petitioner's car together.

On habeas corpus review, this court may not re-weigh the credibility of the witnesses at petitioner's trial. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review"). A fact-finder's credibility determinations are entitled to "near-total deference under Jackson." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). There was substantial evidence presented at trial to support petitioner's conviction. Accordingly, the state court's decision denying this claim is not "objectively unreasonable" and should not be set aside. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). See also 28 U.S.C. § 2254(d)(1).

2. Ineffective Assistance Of Counsel

Petitioner asserts his trial counsel rendered ineffective assistance by: (1) failing to object to evidence bearing on the filing and dismissal of charges against Sua Vang; (2) entering into a stipulation that allowed the jury access to the police interview of David Her, a non-testifying co-defendant; and (3) failing to show that Molia Yang's first statement to the police "alibied" petitioner. Am. Pet. at 10-18.

The Sixth Amendment guarantees the effective assistance of counsel. The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 688. To this end, the defendant must identify the acts or omissions alleged not to have been the result of reasonable professional judgment. Id. at 690. The court

must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### a. Dismissal Of Charges Against Sua Vang

Petitioner claims his counsel was ineffective in stipulating with the prosecution that charges filed against Sua Vang regarding the events of October 19, 1998 could be dropped. Petitioner claims that evidence of the dropping of charges against Sua Vang was not admissible, under California law, at petitioner's trial. Moreover, petitioner claims this evidence prejudiced his case because "the hypothesis of petitioner's guilt and that of Sua Vang's were mutually exclusive," and jurors would equate a dismissal of charges against Vang as a determination by the prosecution that Vang was innocent. Id. at 11:2-7.

On collateral review, the Superior Court of Sacramento County, the only court to address this claim in detail, responded as follows:

> The minute orders for the trial indicate that Sua Vang had been called to testify, and at first had failed to appear. After a bench warrant issued, Sua Vang appeared a few days later. That same day, the parties entered into the stipulation in question. Sua Vang did not testify that day, but was ordered to return. A few days later,

/////

> Sua Vang testified at an Evid. Code § 402 hearing with an attorney present. Thereafter, however, it appears that Sua Vang did not testify before any jury.
>
> It may well have been a tactical choice on the part of petitioner's trial defense counsel to enter into the stipulation, in anticipation that Sua Vang would indeed testify and testify in favor of the prosecution. If that had happened, the stipulation would have acted as impeachment of Sua Vang's testimony, that he was testifying for the prosecution in exchange for not being prosecuted.
>
> Even if this were not the case, the stipulation appears to have been harmless. The evidence was more than sufficient to show petitioner's participation in the crimes. The main issue at trial appears to have been whether the shots had been fired from persons in petitioner's car, or whether they had come from occupants of a separate car, that of Sua Vang. There was testimony from the occupants of victim's car consistent with the theory that the shots had come from Sua Vang's car and that Sua Vang was one of the shooters; that testimony was rejected, in favor of testimony from other persons placing the petitioner's car, with petitioner in it, as the chasing car that eventually fired the shots. Whether or not the police afterward may have thought that Sua Vang was not responsible probably had little if any effect on the jurors, who were judging the credibility of the actual witnesses of the events, and not implied opinions of investigating officers. Thus, even if petitioner's counsel had been deficient in entering the stipulation, had the stipulation not been presented to petitioner's jury it is not reasonably likely that there would have been a different outcome of the trial. . .

Resp't's Lodged Doc. I at 3-4.

A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972). Therefore, petitioner's claim that evidence of dropping the charges against Sua Vang was inadmissible under California law is not cognizable in this action. Am. Pet. at 10-11. Moreover, petitioner has not explained how the Superior Court decision, with respect to this claim, is contrary to or involved an unreasonable application of clearly established federal law, or how the decision was based on an unreasonable determination of the facts. The Superior

Court addressed both the tactical advantage of stipulating to this evidence and its low value at trial compared to the testimony that placed petitioner in the car that fired shots at the victims. This claim of ineffective assistance of counsel should be denied.

### b. Police Interview of David Her

Petitioner also asserts trial counsel should have objected to the playing of a tape-recorded interview of David Her conducted by police officers. Am. Pet. at 12-16. While Her never implicated petitioner during the interview, petitioner asserts that Her's evasive and sometimes fabricated accounts of the events of October 19, 1998 demonstrated Her's consciousness of guilt, which was prejudicial to petitioner because other witnesses testified that petitioner was with Her on the evening of October 19, 1998. Id. at 14:16-15:3. On collateral review, the Superior Court of Sacramento County, the only court to address this claim in detail, concluded petitioner's right to counsel was not infringed for the following reasons:

> From the substance of David Her's statement, it would appear that competent defense counsel would have wanted the statement to be introduced before petitioner's jury, because David in the statement denied that petitioner was there at all, and claimed that he had gotten out of Meng's car and not petitioner's. As this would support petitioner's theory that Sua Vang, in a separate car, had done the shootings, and not petitioner, competent defense counsel would make a tactical choice to not object to the introduction of the statement and even stipulate to its admission.

Resp't's Lodged Doc. I at 5. The Superior Court also found that petitioner was not prejudiced by the playing of the tape-recorded interview to the jury:

> And, regardless, the admission of the statement, even if error, was harmless error, as David Her did not point the finger at petitioner as being involved in any way in the crimes. Thus, had the statement not been admitted, it is not reasonably likely that there would have been a different outcome of the trial.

Id.

Petitioner cites Lilly v. Virginia, 527 U.S. 116, 139-140 (1999), for the proposition that had defense counsel not stipulated to it, David Her's "untested confession" would have been rendered inadmissible as a violation of the Confrontation Clause. Assuming

12

that Her's statement was a "confession," petitioner's claim still lacks merit. The remedy ordered by the Lilly court for such an erroneous admission was to allow the state courts to "consider in the first instance whether this Sixth Amendment error was 'harmless beyond a reasonable doubt.'" Lilly, 527 U.S. at 140 (citing Chapman v. California, 386 U.S. 18, 24 (1967)). Here, in addressing petitioner's ineffective assistance claim, the state court already has determined that even if the admission of the statement was error, it was harmless error, and therefore would not have resulted in a different outcome at trial. Resp't Lodged Doc. I at 5.

Furthermore, petitioner claims that the combined effect of Her's untested "confession," the fact that Her declined to take a polygraph, the jury instructions given, and questions from the jury before it rendered a verdict, indicate the jury's "attention to the strength of the case against David Her and the strength of evidence tying David Her to Petitioner's car." Am. Pet. at 15: 6-8. In so doing, he is acting as a "Monday morning quarterback" in reviewing the tactical decisions of his trial counsel. As the Supreme Court admonished in Strickland:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Citation omitted.) A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (Citation omitted.) There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

466 U.S. at 689.

Her stated that petitioner was not present at the house the night of the crime. CT 653. Some of the witnesses placed Her in the car as the driver; Her responded that he did not

even know how to drive and reiterated that he was not present in the car. CT 655-657. Her declined to take a polygraph after Detective McClatchey described part of the polygraph process as the measuring of blood. CT 659. Despite Detective McClatchey's repeated threats and Her's admittedly poor English language skills, Her remained adamant that he was not involved in any way with the crime. CT 640, 661-665.

Petitioner argues his attorney should have known that the other witnesses would be believed over Her, instead of allowing the jury to weigh Her's truthfulness against the truthfulness of the other witnesses. This is precisely the sort of review the Court in Strickland cautioned against. Petitioner's counsel could have reasonably believed that Her's testimony would exonerate his client and be more believable than the testimony of conflicting witnesses.

Additionally, petitioner fails to show the Superior Court's decision is contrary to or involved an unreasonable application of clearly established federal law, or that the decision was based on an unreasonable determination of the facts. Petitioner's second ineffective assistance of counsel claim must be rejected.

### c. Molia Yang's Statement to Police

Petitioner's last claim of ineffective assistance of counsel concerns his assertion that trial counsel failed to elicit exonerating testimony from Molia Yang. Am. Pet. at16-18. Respondent concedes there is no underlying reasoned decision from a state court on this issue. Answer at 21:2-4. When the state court does not issue a "reasoned opinion," this court undertakes an independent review of the claims. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

At trial, Molia Yang testified she was "not totally sure" of her testimony and that her initial police interview would be a better description of what happened on the night of the shooting. RT 534:18-23, 564:19-22. She provided an abbreviated version of her earlier statement, but did not include certain details petitioner deems critical, namely regarding when

/////

petitioner and David Her left "to go to the grocery store" and when Sua Vang, Ming Vue and a third party arrived at Her Yang's house.

Petitioner argues that if trial counsel had elicited Molia's full statement to the police, including that petitioner announced his intention "to go to the grocery store" shortly before the shooting, he would have been effectively "alibied." Am. Pet. at 18:9-20. But no other evidence corroborated petitioner's actually going to the store instead of chasing Mike Xiong's car. In light of the record as a whole, jurors could well have found petitioner's statement to Yang that he was going to the store as nothing more than an attempt to cover up what he was actually doing. The fact that trial counsel did not elicit more facts from Molia Yang does not reflect representation outside the range of competent assistance, but rather appears to be an exercise of reasonable judgment. Moreover, failure to present petitioner's self-serving statement through Ms. Yang did not prejudice petitioner's case. Petitioner's final ineffective assistance of counsel claim must be rejected.

### 3. Cumulative Effect of the Errors

Petitioner claims the cumulative effect of the constitutional errors described above violated his rights to due process and effective assistance of counsel. Am. Pet. at 19. Petitioner presented this claim to the California Supreme Court, which denied it summarily. Resp't's Lodged Doc. J at 74-75; Resp't's Lodged Doc. K. Because this court has found petitioner's first four claims lack merit, it can find no fault in the state court's denial of his cumulative claim based on those claims.

### 4. Imposition of Consecutive Sentences on Facts Not Before Jury

Petitioner's last claim is that his Sixth and Fourteenth Amendment rights were violated by the trial court when he was ordered to serve consecutive sentences without the necessary findings of fact being made by the jurors. Am. Pet. at 19. As indicated above, petitioner was convicted of both murder and attempted murder. Petitioner claims he could not be ordered to serve consecutive sentences for these offenses because jurors did not indicate these

offenses involved different victims. Id. But jurors did indicate they found petitioner guilty of murder with respect to Gao Vue and attempted murder with respect to Mike Xiong. Resp't's Lodged Doc. E at 19-20 n.3. Because there is no basis for petitioner's final claim, the court will recommend that it be rejected.

III. Conclusion

For the foregoing reasons, the court will recommend that petitioner's application for a writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 22, 2009.

_____
U.S. MAGISTRATE JUDGE

3/vue0981.157

16